UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**

APR 1 4 2011

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

SALVATORE CUOMO, SR. and
CHERYL A. CUOMO,

       Debtors.

_____/

LUIS FIGUEROA and ANA FIGUEROA,

       Plaintiffs,

v.

SALVATORE CUOMO, SR. and
CHERYL A. CUOMO,

       Defendants.

_____/

Case No. 6:09-bk-17173-ABB
Chapter 7

Adv. Pro. No. 6:10-ap-00029-ABB

## MEMORANDUM OPINION

This matter came before the Court on the Complaint (Doc. No. 1) filed by the Plaintiffs Luis Figueroa and Ana Figueroa against the Defendants/Debtors Salvatore Cuomo and Cheryl Cuomo (collectively, "Debtors") requesting the:  (i) Debtors' discharge be denied pursuant to 11 U.S.C. Section 727(a); (ii) the financial transactions relating to the parties' hotel venture be deemed nondischargeable pursuant to 11 U.S.C. Sections 523(a)(2), 523(a)(4), and 523(a)(6); and (iii) damages be awarded to Plaintiffs pursuant to Florida statutory law.  The final evidentiary hearing was held on March 2, 2011 at which the parties and their respective counsel appeared.  The parties filed post-hearing briefs pursuant to the Court's directive (Doc. Nos. 38, 39).

Judgment is due to be entered in favor of the Debtors and against Plaintiffs for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Hotel Venture*

Ana Figueroa and Salvatore Cuomo are cousins; Ana has known Salvatore since he was an infant. The Figueroa and Cuomo families shared a close relationship over the years. Plaintiffs are retired. Cheryl has been employed in the hotel management industry for almost two decades. Salvatore is a police officer in Palm Bay, Florida. The parties do not have any experience with hotel construction or financing or real estate management.

Plaintiffs received a portion of a personal injury settlement award relating to injuries suffered by Ana's and Salvatore's grandmother and wanted to invest the money in a family business. Plaintiffs and the Debtors met regularly and discussed possible opportunities for a family business venture using the settlement funds as start-up capital, with the Debtors to provide sweat equity. Cheryl and Salvatore, based upon Cheryl's experience in the hotel industry, suggested a hotel venture in which the parties would build and operate a hotel. Plaintiffs agreed to the venture and Cheryl started searching in the Interstate 95 corridor in Brevard County for unimproved property to purchase on which to build a hotel.

The Debtors formed the Florida limited liability company CGO & Associates, LLC in 2003 as the entity to carry out the hotel venture. Cheryl was the sole member and

2

manager of CGO.  The Debtors assert "CGO" is named after Salvatore's grandmother and stands for "Comaco's Golden Opportunity."  Plaintiffs assert "CGO" stands for "Cuomo's Golden Opportunity" and they had no involvement with the formation, management, or operation of CGO.  Ana was named as the Treasurer of CGO, but disputes she had any substantive involvement with or understanding of CGO.

Cheryl identified a ten-acre parcel of unimproved land in Palm Bay (the "Property") and the Debtors and Plaintiffs visited the Property together.  The parties agreed the Property was suitable for their venture.  They intended to subdivide the Property into four parcels, sell off three parcels and build the hotel on the fourth.  A purchase contract was executed for a purchase price of $2,000,000.00.  The sale was consummated in September 2005 with CGO as the title owner of the Property.  Plaintiffs funded $114,256.72 of the purchase price by remitting $114,256.72 to CGO and the remainder of the purchase price was financed through a three-month bridge loan.[1]

CGO had a Wingate hotel franchise in place at the time of closing.  The parties expected construction of the hotel to begin within three months of the closing and be completed in early 2006.  The parties believed they would sell the hotel in 2006.

The bridge loan required monthly mortgage payments of $25,000.00.  The Debtors expected to pay the bridge loan through draws from a "jumbo construction loan," which never materialized.  When the bridge loan expired, the bank declined to convert the bridge loan into a permanent loan and stopped funding the project.  CGO sought a new lender for the project and obtained financing with Loyal Mortgage and Loan, Inc.

---

[1] Pls' Ex. 1.

("Loyal Mortgage"). The parties did not present any purchase or mortgage documents for the Property.

Plaintiffs made deposits, either by wire transfer or check, into CGO's account at Washington Mutual Bank from June 2005 through May 2007 totaling $560,956.72. The deposits were made after either Cheryl or Salvatore made a request for funds. Cheryl or Salvatore would contact the Plaintiffs, usually in person, and request a specific sum to be deposited to be used for a specified venture expense. The expenses included franchise fees, soil testing, permits, and mortgage payments. The $560,956.72 provided by Plaintiffs came from the personal injury award, Plaintiffs' personal savings, and a home equity line of credit taken against their home, allegedly at the insistence of Salvatore.

Ana and Cheryl were signatories on the Washington Mutual account and the account statements were sent to Cheryl's home.[2] Cheryl was issued a check card on the account from which she made purchases and withdrawals.[3] Ana asserts she had no involvement with the account, no knowledge of account transactions, and was named a signatory only for the purpose of facilitating wire transfers. Cheryl testified she and Ana went together to Washington Mutual Bank to open the account and Ana had full knowledge of all transactions.

The funds flowing into CGO's bank account were predominantly from Plaintiffs, but other funds were deposited into the account. Salvatore's brother contributed $25,000.00 to the hotel venture in September 2006.[4]

---

[2] Pls' Ex. 6.
[3] Id.
[4] Pls' Ex. 1.

4

CGO made mortgage payments for one year using the funds in its bank account and then defaulted. No construction had begun as of 2009. The Debtors, with the involvement of Plaintiffs, attempted to sell the Property to avoid a foreclosure sale, but were unsuccessful. Loyal Mortgage foreclosed on the Property in August 2009 and acquired the Property.

Plaintiffs instituted a lawsuit against the Debtors in the Florida State Court to collect the funds they infused into the hotel venture. The State Court litigation was stayed pursuant to 11 U.S.C. Section 362(a) by the Debtors' filing for Chapter 7 bankruptcy protection on November 10, 2009.

### Disputed Facts

The parties' agreements, intentions, and transactions were not documented. All communications were verbal. No promissory notes or other writings were executed establishing whether Plaintiffs' deposits were loans or investments. The parties did not discuss or document how any profits would be split amongst them.

The parties dispute whether Plaintiffs' contributions to the hotel venture were loans or investments. Plaintiffs assert the contributions were loans. Plaintiffs testified they understood they were to receive interest at the rate of 10% on their loans and the principal would be repaid in full in 2006 when the hotel was sold. The Debtors assert the funds paid to CGO by Plaintiffs were investments in the hotel venture and not loans. Cheryl testified the parties did not discuss interest payments and no interest was intended to be paid to Plaintiffs.

Ana asserted the Plaintiffs had no knowledge of how the venture was proceeding or how their funds were being used. Her testimony was not credible. The parties had

5

regular communication, frequently in person at Plaintiffs' home. Ana and Cheryl worked together on the various projects and travelled to North Carolina to select color schemes for the interior of the hotel.

### Adversary Proceeding

Plaintiffs filed a multi-count Complaint alleging various causes of action against the Debtors pursuant to 11 U.S.C. Sections 727 and 523 and Florida statutory law relating to civil theft and crimes against the elderly. Plaintiffs have the burden of proof on each cause of action and their burden is substantial.

*11 U.S.C. §§ 727(a)(3) and 727(a)(5):* Plaintiffs allege in their First Cause of Action the Debtors are not entitled to a discharge pursuant to 11 U.S.C. Sections 727(a)(3) and 727(a)(5) because they: (i) have not produced any documents, records, or other evidence demonstrating the disposition of the loaned funds; and (ii) have failed to satisfactorily explain the loss of the loaned funds. Plaintiffs failed to establish grounds for denial of the Debtors' discharge pursuant to either Section 727(a)(3) or Section 727(a)(5).

Neither party kept adequate records of the hotel venture. Their dealings were verbal. They had regular communications regarding the venture and Plaintiffs fully participated in it. They were informed of each expense as it arose. Plaintiffs' assertions of lack of knowledge are not credible. Plaintiffs had knowledge of the CGO bank account and had access to all bank records pursuant to Ana's signatory authority on the account and status as the Treasurer of CGO. The relief sought pursuant to 11 U.S.C. Sections 727(a)(3) and 727(a)(5) is due to be denied.

*11 U.S.C. §§ 727(a)(4)(A) and 727(a)(2)(A):*  Plaintiffs, at trial, raised issues regarding whether the Debtors fully and accurately disclosed in their bankruptcy papers: (i) Cheryl's employment status on the Petition Date; (ii) the earned but unpaid salary owed to Cheryl by Days Inn/Tropical Inn Resort; (iii) the Debtors' income history; (iv) Cheryl's interest in GNO Investment Group, LLC ("GNO"); and (v) the Debtors' interest in CGO.  Plaintiffs did not move to amend their Complaint or to conform their Complaint to the evidence to include any Section 727(a)(4)(A) cause of action for alleged false oaths or any Section 727(a)(2)(A) cause of action for the concealment of assets.

Cheryl was not employed on the Petition Date and accurately disclosed her employment and income status in Schedule I.  She is owed unpaid wages by Days Inn of approximately $24,000.00, representing $1,000.00 per week for six months.[5]  Cheryl testified she did not list the unpaid wages because Days Inn is in foreclosure and she does not expect to be paid.  The Debtors' federal income tax returns reflect they accurately disclosed their income in their original Statement of Financial Affairs.[6]

GNO is an investment club formed by Cheryl and her acquaintances in May 2009.[7]  Salvatore does not have any interest or involvement in GNO.  The fifteen members of GNO meet regularly and pool funds to purchase various investments through an investment account with LPL Financial.  GNO's investment account had a value of approximately $3,434.65 on the Petition Date.[8]  Cheryl's interest in the account was approximately 10%, or $314.00, on the Petition Date.  Cheryl testified she did not list her

---

[5] Pls' Ex. 2.
[6] Pls' Ex. 5.
[7] Pls' Ex. 3.
[8] Pls' Ex. 4.

7

interest in GNO in Schedule B because the investments fluctuated in value and she did not realize the account had a positive value on the Petition Date.

Cheryl is the sole member of CGO; Salvatore has no ownership interest in CGO. The Debtors did not list Cheryl's interest in CGO in Schedule B, but they did list CGO as a business in which they have an interest in their original Statement of Financial Affairs and they disclosed the foreclosure by Loyal Mortgage. Cheryl explained the Debtors did not list her interest in CGO in Schedule B because CGO was dissolved in 2009 and had no value on the Petition Date.

The Debtors were required to disclose Cheryl's interests in GNO and CGO and the Days Inn receivable in their original Schedule B, but failed to do so. Cheryl's omission explanations were credible. The disclosure omissions were the result of unintentional oversight and the Debtors' mistaken belief they did not have to list assets having de minimis or no value. The Debtors filed Amended Schedules and an Amended Statement of Financial Affairs on March 8, 2011 (Main Case Doc. Nos. 19, 20) listing Cheryl's interest in GNO, the Days Inn receivable, and her interest in CGO.

The disclosure omissions do not constitute a basis for denial of the Debtors' discharge. The Debtors lacked the requisite fraudulent intent when they omitted the GNO, CGO, and Days Inn receivable information from their original bankruptcy papers. Plaintiffs did not establish the Debtors knowingly and fraudulently made a false oath or account in their bankruptcy papers. Plaintiffs did not establish the Debtors transferred, removed, destroyed, mutilated, or concealed any assets within one year of the Petition Date with the intent to hinder, delay, or defraud their creditors. Any relief sought pursuant to 11 U.S.C. Section 727(a)(4)(A) or Section 727(a)(2)(A) is due to be denied.

8

*11 U.S.C. § 523(a):* Plaintiffs have failed to establish the foundational element of a Section 523(a) cause of action—that the Debtors, individually, are indebted to Plaintiffs. No documentary evidence was produced establishing Plaintiffs gave funds to the Debtors individually or that the Debtors are personally liable to Plaintiffs. The hotel project was carried out in the name of CGO and all of Plaintiffs' funds were deposited into CGO's bank account. Should documentary evidence exist establishing the Debtors are personally liable to Plaintiffs, the indebtedness is dischargeable because Plaintiffs have not established the elements of any Section 523(a) cause of action.

*11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), 523(a)(6):* Plaintiffs allege the loan indebtedness owed to them by the Debtors is nondischargeable pursuant to Sections 523(a)(2), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. Plaintiffs did not plead a specific subsection of 523(a)(2). Their Section 523(a)(2) action, based upon Plaintiff's trial presentation, constitutes a Section 523(a)(2)(A) cause of action.

Plaintiffs allege the Debtors fraudulently induced them to make the loan transactions. They assert the Debtors promised to repay the loans and such promise was a material and fraudulent misrepresentation because the Debtors had no intention of repaying the loans.

Plaintiffs were not induced to give the $560,956.72 to CGO through any fraudulent means or motives. The parties jointly agreed to pursue the hotel venture and Plaintiffs voluntarily contributed funds to the project. The Debtors requested funds from the Plaintiffs for specific expenses as they arose and explained to the Plaintiffs how the funds would be used. The funds deposited into CGO's account by Plaintiffs were used for the hotel venture. The Debtors intended to repay the Plaintiffs the $560,956.72

9

through the eventual sale of the hotel. The Debtors were unable to repay the Plaintiffs because the venture failed. The Debtors' failure to repay Plaintiffs the $560,956.72 may constitute a contractual breach, but does not constitute fraud.

Plaintiffs have not established by a preponderance of the evidence any debt owed to Plaintiffs by the Debtors was incurred by the Debtors through false pretenses or fraud.

*11 U.S.C. Section 523(a)(4):* Plaintiffs neither pled nor presented any evidence relating to the elements of a Section 523(a)(4) cause of action. They did not establish the Debtors committed fraud or defalcation while acting in a fiduciary capacity. They did not establish the Debtors committed embezzlement or larceny. All of the hotel transactions occurred with the Plaintiffs' full knowledge and consent. Plaintiff voluntarily transferred the funds to the Debtors with the intent the funds be used for the parties' joint hotel venture. The funds were used for the hotel venture.

Plaintiffs have not established by a preponderance of the evidence the Debtors took any of their property, entrusted to the Debtors or otherwise, with fraudulent intent or with intent to convert such property. Any relief sought pursuant to Section 523(a)(4) is due to be denied.

*11 U.S.C. Section 523(a)(6):* Plaintiffs neither pled nor presented any evidence relating to the elements of a Section 523(a)(6) cause of action. They did not establish any indebtedness owed to them arose through willful and malicious conduct by the Debtors. Any relief sought pursuant to Section 523(a)(6) is due to be denied.

*Fla. Stat. §§ 772.11, 812.014(1), 825.103:* Plaintiffs allege the Debtors committed civil theft and exploited the elderly pursuant to Florida statutory law.

10

Plaintiffs did not present their ages and have not established they qualify as "elderly" pursuant to Florida statutory law.

The Debtors did not obtain the funds from Plaintiffs by deception or intimidation. They did not request the funds from Plaintiffs with the intent to temporarily or permanently deprive Plaintiffs of the funds. Plaintiffs entered into the hotel venture voluntarily and participated in the venture. They voluntarily contributed their funds to the project and expected to profit from their contribution. Plaintiffs did not establish the Debtors committed any violation of Florida statutory law.

## CONCLUSIONS OF LAW

The party objecting to discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991). Objections to discharge and to dischargeability of a debt are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "[T]he reasons for denying a discharge must be real and substantial, not merely technical and conjectural." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994).

### *11 U.S.C. Section 727(a) Causes of Action*

*Section 727(a)(3):* Section 727(a)(3) provides the Court shall grant the Debtors a discharge unless:

> the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case. . . .

11

11 U.S.C. §727(a)(3).  The purpose of Section 727(a)(3) is to make certain the creditors and Trustee are given sufficient information to understand the debtor's financial condition.  In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996).  The debtor must justify a lack of adequate record keeping.  11 U.S.C. § 727(a)(3); Meridian Bank v. Alten, 958 F.2d 1226, 1234 (3d Cir. 1992).  Each case must be determined on its own facts and the level of a debtor's business acumen and sophistication are relevant.  In re Milam, 172 B.R. 371, 375 (Bankr. M.D. Fla. 1994); Meridian Bank, 958 F.2d at 1231.

The parties are unsophisticated with business matters and did not keep formal records of their hotel venture.  They are family and their dealings were verbal, with no documentation of their agreements, understandings, and financial transactions.  Plaintiffs had access to CGO's bank records.  Plaintiffs failed to establish a basis for denial of the Debtors' discharge pursuant to 11 U.S.C. Section 727(a)(3).

*11 U.S.C. Section 727(a)(5):* A discharge will be denied pursuant to Section 727(a)(5) where:

> the debtor has failed to explain satisfactorily, before determination of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5).  Plaintiffs have the initial burden of establishing their Section 727(a)(5) objection to discharge.  Hawley v. Cement Indus., Inc. (In re Hawley), 51 F.3d 246, 249 (11th Cir. 1995).  They must establish "the debtor formerly owned substantial, identifiable assets that are now unavailable to distribute to creditors."  Murphy v. Rivertree Landing, LLC (In re Murphy), Case No. 6:08-cv-198-Orl-31, 2008 WL 2224835 *5 (M.D. Fla. May 27, 2008).  The burden then shifts to the debtor to satisfactorily explain the loss.  In re Hawley, 51 F.3d at 249.  Whether a debtor has

satisfactorily explained a loss of assets is a finding of fact. <u>Id.</u> at 248. "To be satisfactory, an explanation must convince the judge[.]" <u>In re Chalik</u>, 748 F.2d at 619.

Plaintiffs did not establish their initial burden as to any alleged "asset losses." The Debtors did not ever have an ownership interest in the funds contributed by Plaintiffs; those funds were transmitted to CGO for the hotel venture. The venture failed before a hotel was built. The Property was foreclosed upon by Loyal Mortgage in 2009. To the extent the demise of CGO constitutes a "loss," the Debtors satisfactorily explained the venture's demise.

*Sections 727(a)(4)(A) and 727(a)(2)(A):*  A discharge shall be denied pursuant to Section 727(a)(4)(A) where "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. 11 U.S.C. § 727(a)(4)(A). "A debtor has a paramount duty to consider all questions posed on a statement or schedule carefully and see that the questions are answered completely in all respects." <u>In re Sofro</u>, 110 B.R. 989, 991 (Bankr. S.D. Fla. 1990).

A disclosure omission may constitute a false oath or account pursuant to Section 727(a)(4)(A). A discharge should be denied where the omission is both fraudulent and material. <u>Swicegood v. Ginn</u>, 924 F.2d 230, 232 (11th Cir. 1991). "Discharge may not be denied where the untruth was the result of mistake or inadvertence." <u>Keefe v. Rudolph (In re Rudolph)</u>, 233 Fed. App'x 885, 889 (11th Cir. 2007) *(citation omitted)*.

A discharge shall be denied pursuant to Section 727(a)(2)(A) where a debtor, with intent to hinder, delay, or defraud a creditor has, within one year of the petition date, transferred, removed, destroyed, mutilated, or concealed property of the debtor. 11 U.S.C. § 727(a)(2)(A). "Concealment" in relation to Section 727(a)(2)(A) "occurs when

13

a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (citation omitted).

The Debtors failed to disclose Cheryl's interest in GNO and CGO and the Days Inn receivable in their initial Schedules. Their disclosure deficiencies were not fraudulent. They were not attempting to conceal any assets and reaped no benefits from his disclosure omissions. They amended their Schedules and Statement of Financial Affairs to remedy the disclosure deficiencies. The Chapter 7 Trustee Carla P. Musselman raised no issues regarding the Debtors' disclosures and assets. This case has been declared a no asset case and no adversary proceedings other than Plaintiffs' were instituted against the Debtors.

The Debtors did not transfer or conceal any property with the intent to hinder, delay, or defraud their creditors. The Debtors did not knowingly or fraudulently make a false oath or account in connection with his bankruptcy case. Plaintiffs have not established a basis for denial of a discharge pursuant to either 11 U.S.C. Section 727(a)(2)(A) or Section 727(a)(4)(A).

Plaintiffs have not established a basis for denial of a discharge pursuant to any provision of 11 U.S.C. Section 727(a).

### 11 U.S.C. Section 523(a)

A Section 523 cause of action requires the existence of a debt owed by the defendant to the plaintiff. 11 U.S.C. § 523(a). Plaintiffs failed to establish the Debtors are individually indebted to Plaintiffs. CGO, not the Debtors, was the recipient of Plaintiffs' funds. Plaintiffs presented no promissory notes or guarantees establishing any

individual liability of the Debtors for the funds contributed by Plaintiffs to the hotel venture. Should documentary evidence exist establishing the Debtors are individually liable to Plaintiffs, the indebtedness is dischargeable because Plaintiffs have not established the elements of any Section 523(a) cause of action.

*11 U.S.C. § 523(a)(2)(A):* Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiffs must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action: (1) Debtor made a false representation with the purpose and intent to deceive Plaintiffs; (2) Plaintiffs relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiffs sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996). Plaintiffs must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of reliance on intentional misstatements by the debtor. City Bank & Trust Co. v. Vann (In re Vann), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an

issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. Id.

The creditor's reliance upon the debtor's false representation must be justified. Field v. Mans, 516 U.S. 59, 73-75 (1995); In re Vann, 67 F.3d at 283-84. A plaintiff must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. Lightner v. Lohn, 274 B.R. 545, 550 (M.D. Fla. 2002). "Proof of fraud in cases involving unfulfilled promises requires a plaintiff to prove that when a defendant made promises he knew he could not fulfill them or had no intention of fulfilling them." In re Pupello, 281 B.R. 763, 766 (Bankr. M.D. Fla. 2002).

Plaintiffs voluntarily contributed to the hotel venture. The Debtors requested funds from the Plaintiffs for specific expenses and used the funds for hotel expenses. The Debtors intended to repay Plaintiffs through the sale of the hotel. The Debtors did not obtain any funds through fraud or with fraudulent intent. The Debtors did not fulfill their payment obligations to Plaintiffs due to the demise of the venture. Failure to pay a debt is not the equivalent of fraud. Bank of La. v. Bercier (Matter of Bercier), 934 F.2d 689, 692 (5th Cir. 1991). Plaintiffs have failed to establish the elements of Section 523(a)(2)(A).

*11 U.S.C. Section 523(a)(4):* Section 524(a)(4) provides a debtor is not discharged from debts resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Embezzlement and larceny constitute separate Section 524(a)(4) causes of action and do not require a finding of

16

fiduciary capacity. <u>McDowell v. Stein</u>, 415 B.R. 584, 594 (S.D. Fla. 2009). A plaintiff, however, must establish fraud or fraudulent intent. <u>In re Kelley</u>, 84 B.R. 225, 231 (Bankr. M.D. Fla. 1988).

"Embezzlement" is defined for dischargeability purposes as "the fraudulent appropriation or property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." <u>In re Kelley</u>, 84 B.R. at 231 (*quoting* <u>Moore v. U.S.</u>, 160 U.S. 268, 269 (1895)). Larceny constitutes the fraudulent taking of another's property with the intent to convert it without the other's consent. <u>In re Pupello</u>, 281 B.R. 763, 768 (Bankr. M.D. Fla. 2002). Larceny differs from embezzlement in that the original taking of the property must be unlawful. <u>Id.</u>

Plaintiffs did not plead or present any evidence the Debtors were fiduciaries. Plaintiffs did not establish the Debtors fraudulently appropriated funds from the Plaintiffs. The Debtors did not commit embezzlement or larceny. Plaintiffs did not establish the elements of Section 523(a)(4).

*11 U.S.C. § 523(a)(6):* Section 523(a)(6) provides any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. 11 U.S.C. § 523(a)(6). Plaintiffs must establish by a preponderance of the evidence the Debtors: (1) deliberately and intentionally; (2) injured Plaintiffs or Plaintiffs' property; by (3) a willful and malicious act. <u>In re Nofziger</u>, 361 B.R. 236, 242 (Bankr. M.D. Fla. 2006). Plaintiffs must establish by a preponderance of the evidence the injury was intentional—that the Debtors intended the consequences of their act. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61-62 (1998). "The established law is clear that a debtor must commit some type of intentional tort directed against the claimant or his

17

property in order for a court to find that the resulting damages are nondischargeable." In re Nofziger, 361 B.R. at 243.

Plaintiffs did not present any evidence establishing the Debtors deliberately and intentionally injured Plaintiffs through a willful and malicious act. The parties all wanted the hotel venture to succeed. They were working towards that goal, but the venture failed due to the parties' inexperience with such a complex undertaking and unfavorable economic conditions.

Plaintiffs have not established by a preponderance of the evidence any indebtedness owed to them by the Debtors is nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A), 523(a)(4), or 523(a)(6). Any and all indebtedness owed by the Debtors to Plaintiffs is dischargeable and is due to be discharged pursuant to 11 U.S.C. Section 727(a).

### Florida Statutory Law

Fla. Stat. Section 772.11 provides for an award of civil damages where a plaintiff first establishes, by clear and convincing evidence, he has been injured by a violation of certain provisions of Chapter 812 of the Florida Statutes, which pertain to theft, robbery, and related crimes, and exploitation of an elderly person or disabled adult.[9] Plaintiffs

---

[9] Section 772.11 provides:

> Any person who *proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1)* has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

FLA. STAT. § 772.11 (*emphasis added*).

allege the Debtors violated Fla. Stat. Sections 812.014(1), civil theft, and 825.103, exploitation of an elderly person or disabled adult. Section 812.014(1) provides:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

FLA. STAT. § 812.014(1). Establishing all of the elements of Section 812.014(1), including "felonious intent," for a finding of civil theft is a fundamental predicate to an award of damages pursuant to Section 772.11. In re Caribbean K Line, Ltd., 288 B.R. 908, 922 (S.D. Fla. 2002).

Section 825.103 makes punishable the exploitation of an elderly person or disabled adult. Exploitation means:

> Knowingly, by deception or intimidation, obtaining or using, or endeavoring to obtain or use, an elderly person's . . . funds, assets, or property with the intent to temporarily or permanently deprive the elderly person . . . of the use, benefit, or possession of the funds . . . ."

FLA. STAT. § 825.103.

Plaintiffs did not establish the elements of either Section 812.014(1) or 825.103. Plaintiffs contributed funds to the hotel venture voluntarily. They fully participated in the venture and intended to earn a profit on their contribution. The Debtors did not obtain any funds from Plaintiffs through deception or intimidation or with felonious intent. They did not exploit Plaintiffs. They did not commit theft.

19

*Conclusion*

Adversary proceedings stemming from failed family financial ventures are difficult. Emotions run high and the true story of what really happened is often difficult to discern. Plaintiffs are upset over the loss of their money on the hotel venture. They expended their retirement savings and equity in their home. They want recompense for their loss.

The facts do not establish a basis for denial of the Debtors' discharge or a finding the Plaintiffs' contributions constitute nondischargeable debts. The parties all wanted the venture to be successful. Plaintiffs lost their money not due to anyone's fraudulent or wrongful conduct, but due to the parties' inexperience and unforeseen unfavorable economic conditions. The parties have all suffered from the venture's failure.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiffs' Complaint (Doc. No. 1) is hereby **DENIED** pursuant to 11 U.S.C. Sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), 727(a)(5), 523(a)(2)(A), 523(a)(4), 523(a)(6), and Fla. Stat. Sections 772.11, 812.014(1), and 825.103; and it is further

**ORDERED, ADJUDGED and DECREED** that any indebtedness owed by the Debtors to Plaintiffs is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A), 523(a)(4), and 523(a)(6) and is due to be discharged; and it is

**ORDERED, ADJUDGED and DECREED** that the Clerk of Court is hereby directed to enter the general discharge of the Debtors pursuant to 11 U.S.C. Section 727.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 14th day of April, 2011.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge

21